VARHOLLA, APPELLANT, *v.* VARHOLLA, APPELLEE.

(No. 78-491—Decided December 7, 1978.)

*Johnson & Johnson Co., L. P. A.,* and *Mr. Danny D. Johnson,* for appellant.

*Messrs. Day, Ketterer, Raley, Wright & Rybolt,* *Mr. John R. Werren* and *Mr. Ralph F. Dublikar,* for appellee.

*Per Curiam,* The question presented is whether one spouse can maintain an action for personal injuries received by the alleged negligence of the other spouse, where the married parties are living together as husband and wife at the time of the alleged injury.

The same issue was before this court in *Lyons* v. *Lyons* (1965), 2 Ohio St. 2d 243, where we held that such actions

were barred by interspousal immunity. Our reasons were threefold: (1) the immunity promotes marital harmony by discouraging otherwise litigious spouses from pursuing real or fanciful claims to the detriment of the family unit; (2) the immunity prevents fraud and collusion at the expense of tactically disadvantaged insurance companies; and (3) as this involves a matter of public policy, changes in this area must emanate from the General Assembly, not the courts.

Appellant urges the court to overrule this precedent on the ground that the reasons supporting our holding in *Lyons, supra,* are either illusory or no longer compelling. Suffice it to say that we adhere to the principles expressed in *Lyons,* in the belief that they are as sound today in social policy as they are in reason. Appellant's contention cannot be accepted in disregard of clear precedent.

Appellant also challenges the validity of the interspousal immunity doctrine based on this court's decision in *Primes* v. *Tyler* (1975), 43 Ohio St. 2d 195, which held R. C. 4515.02, the "guest statute," unconstitutional. The challenge in *Primes* was directed essentially to the differential treatment accorded "paying" and "non-paying" passengers under the statute; the "non-paying" passengers being unable to recover for injuries sustained by a driver's negligent operation of a motor vehicle. The stated purposes in support of the statute were: (1) to prevent spurious claims by passengers against drivers in order to defraud insurance companies and; (2) to preserve the hospitality of the host driver.

We think it sufficient to state that the interspousal immunity doctrine, with its inherent differential treatment of spouses and non-spouses, reasonably relates to the legitimate state interest of fostering marital harmony and preventing fraud and collusion. The difference between this doctrine and R. C. 4515.02 lies in the higher state concern for regulating marriage and the greater potential for fraud stemming from the marital relationship, where an insured defendant spouse stands to benefit personally from losing

a lawsuit instituted by his spouse. Appellant's contention is accordingly not well taken.

For the foregoing reasons, the judgment of the Court of Appeals is hereby affirmed.

*Judgment affirmed.*

LEACH, C. J., HERBERT, CELEBREZZE, P. BROWN, SWEENEY and LOCHER, JJ., concur.

WILLIAM B. BROWN, J., dissenting. By endorsing, in 1978, the doctrine that spouses who are living together cannot sue one another for injuries caused by each other's negligence, the majority perpetuates a common-law rule which has had no support in fact, or even in legal fiction, for over a century. Because I believe that the majority's endorsement of interspousal immunity is regressive, that it leads to unfair and probably unconstitutional results, and that it proves all too certainly that justice can be blind, at least to the realities of the 20th Century, I must dissent.

I.

The doctrine of interspousal immunity was originally based on the legal fiction that a husband and wife are one. 1 Blackstone's Commentaries 442 (1765). While this was undoubtedly a fiction of epic proportions, it supported the proposition that spouses cannot sue one another in tort. However, in the 1840's, American jurisdictions passed statutes abrogating that common-law fiction and insuring wives as well as husbands the right to sue and be sued for the torts committed by or to them. Once those acts were passed, the doctrine of interspousal immunity became an anachronism—an anachronism which the majority opinion perpetuates.

Other jurisdictions have not displayed this court's interest in preserving interspousal immunity. When this court upheld the doctrine last, in *Lyons* v. *Lyons* (1965), 2 Ohio St. 2d 243, it joined a shrinking *majority* of American jurisdictions. Today that shrinking majority has become a

shrinking *minority*. Annotation, 43 A. L. R. 2d 632 and Later Case Service.

Why that minority is shrinking becomes apparent when one scrutinizes the commonly cited arguments for supporting interspousal immunity set forth in *Lyons*. These arguments are (1) that interspousal immunity is necessary to promote marital harmony; (2) that interspousal immunity prevents fraud and collusion against tactically disadvantaged insurance companies; and (3) that abrogating interspousal immunity is a legislative, rather than a judicial, task. None of these arguments is persuasive.

The last argument, that the General Assembly should do away with interspousal immunity, has never been persuasive. Interspousal immunity has its origins in common law. As a judicially-created doctrine, it may be judicially abolished. (*Sears* v. *Cincinnati* [1972], 31 Ohio St. 2d 157, 161, overruling paragraph one of the syllabus in *Hyde* v. *Lakewood* [1965], 2 Ohio St. 2d 155; *Muskopf* v. *Corning* [1961], 55 Cal. 2d 211, 359 P. 2d 457; *Molitor* v. *Kaneland Community United District No. 302* [1959], 18 Ill. 2d 11, 25, 163 N. E. 2d 89.)

The second rationale underlying *Lyons* is that interspousal immunity prevents collusion in cases brought by one married partner against the other's insurance company. The reasons underlying that argument are strained indeed. To begin with, it is unlikely that "a wife's love for her husband is such that she is more likely to bring a false suit against him than a genuine one." (Prosser on Torts, 863, Section 122.) Moreover, there are numerous safeguards against fraudulent claims built into the judicial process. Given the deterrent of a perjury charge and such devices for uncovering the truth as pre-trial discovery and cross-examination, the odds of a couple's successfully pursuing a fraudulent claim are remote. *Klein* v. *Klein* (1962), 58 Cal. 2d 692, 376 P. 2d 70. Finally, this court rejected a similar collusion argument when it unanimously declared Ohio's guest statute unconstitutional in *Primes* v. *Tyler* (1975), 43 Ohio St. 2d 195. I submit that the possibility of

an occasional collusive suit against tactically disadvantaged insurance companies is not a sufficiently serious threat to the integrity of the judicial system to justify withdrawing a cause of action from all spouses injured by the negligent actions of their married partners.

The *Lyons* opinion also justifies interspousal immunity on the grounds that it promotes marital harmony. To conclude that forbidding spouses to sue one another promotes domestic peace is a *non sequitur*. Marital harmony either exists or it does not. The harmonious marriage will not be hurt by allowing one spouse to benefit from the insurance coverage of the other; and the unhappy marriage will not be helped by denying legal rights to an already disgruntled spouse. Indeed, in light of today's 40-50 percent divorce rate, it is safe to conclude that the state's preservation of interspousal immunity has had little or no positive effect on the happiness of marriage partners and that, therefore, the doctrine should no longer be applied to bar the rights of individuals to sue or be sued in tort.

Because interspousal immunity is a judicially-created doctrine which this court may as readily abolish as adhere to, because that immunity places serious limitations on the century-old right of *both* spouses to sue and be sued for the torts committed by or to them, and because the doctrine does not either discourage collusion or promote family harmony, it should be overruled.

## II.

Interspousal immunity should also be abolished because it is unconstitutional. In *Primes* v. *Tyler, supra,* this court unanimously declared Ohio's guest statute unconstitutional on the grounds that it denied equal protection and also denied due process by creating an irrebuttable presumption. The statute under challenge in that case immunized drivers of cars from suits by guests injured by the negligent operation of those cars. The grounds advanced by the state for upholding the statute were that it preserved hospitality and prevented the possibility of fraudulent claims. This court held that neither rationale "'suit-

ably furthered' " an " 'appropriate government interest' " and that, therefore, the differential treatment of guests and non-guests injured by the negligent operation of the car in which they were riding violated equal protection. We also found that the statute created a conclusive presumption that lawsuits filed by guests would be fraudulent or collusive when that presumption is not necessarily or universally true in fact. On that rationale, we found that the statute violated due process.

The same reasoning applies to the instant cause. To begin with, the class discriminated against under interspousal immunity is very similar to that which was discriminated against under the guest statute. Its distinguishing feature is that it comprises individuals who know the driver or other negligent individual they may later wish to sue. The reasons advanced for discriminating against that class are also almost identical. They are to prevent collusive suits against those insuring negligent drivers or other negligent individuals and to promote a socially useful cause (hospitality and domestic harmony).

Moreover, both classifications deny equal protection because they impose differential treatment which does not suitably further an appropriate governmental interest. *Police Dept. of Chicago* v. *Mosley* (1972), 408 U. S. 92, 95. While it is possible that preserving happy marriages is a more appropriate governmental interest than is preserving hospitality, interpousal immunity does not do more to further that interest than the guest statute did to further hospitality. (Indeed, the guest statute did further hospitality to the extent that, by immunizing those who drove friends, it encouraged car pooling, etc. Since husbands and wives are likely to drive in the same car or otherwise be together when the negligence of one may injure the other and they are likely to do so even if the marriage is an unhappy one, interspousal immunity has no similar function.) In addition, neither the statute nor the doctrine is necessary to prevent collusion. The deterrent of perjury charges and the safeguards of pre-trial discovery and cross-examination apply whether the suit

against a driver is brought by his friend or his wife. Also, while it is possible that collusion may be greater between spouses than friends, the number of spouses likely to be injured by the negligence of a married partner is greater than that of persons injured by negligently driving friends. As a result, spouses denied the right to sue under interspousal immunity are as over-inclusive a class as were friends denied the right to sue under the guest statute.

Given the fact that spouses denied the right to sue under the interspousal immunity doctrine are discriminated against in the same manner and for equally unconvincing reasons as are friends denied the right to sue under a guest statute, I submit that the doctrine of interspousal immunity violates the Equal Protection Clause of the United States Constitution.

Interspousal immunity also creates a conclusive presumption which, like the one created by the guest statute, unconstitutionally denies due process.

"* * * [P]ermanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments," especially when they are "not necessarily or universally true in fact, and when the state has reasonable alternative means of making the crucial determination." *Vlandis* v. *Kline.* (1973), 412 U. S. 441, 446 and 452. When the majority upholds a rule of law preventing spouses from suing one another for the injuries caused by their negligent tortious acts, it establishes the same conclusive presumption that lawsuits filed by a particular class of individuals are fraudulent or collusive as the General Assembly established when it wrote the guest statute. Neither presumption is necessarily or universally true in fact. Moreover, in the case of guests or spouses, the state, through the normal judicial process, has such reasonable alternative means of winnowing fraudulent from non-fraudulent claims as pre-trial discovery, etc. Under the reasoning of the *Primes* opinion, I submit that interspousal immunity violates the Due Process Clause of the United States Constitution.

Since interspousal immunity is an outmoded, ineffective and unconstitutional doctrine, I dissent.