NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0544n.06

No. 19-2089

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

B & G TOWING, LLC; ANTHONY THOMAS, )
                                      )
          Plaintiffs,                 )
                                      )
JOAN FIORE; CITY WIDE TOWING, INC.; PAUL )
OTT; JAVION AND SAM'S 24 HOUR TOWING  )
SERVICES, INC.,                       )
                                      )
          Plaintiffs-Appellants,      )
                                      )
v.                                    )
                                      )
CITY OF DETROIT, MI,                  )
                                      )
          Defendant-Appellee.         )

**FILED**
Sep 21, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

Before: GIBBONS, LARSEN, and NALBANDIAN, Circuit Judges.

LARSEN, Circuit Judge. Joan Fiore and the towing company she owns, Javion & Sam's 24 Hour Towing Service (collectively, Fiore), sued the City of Detroit for using information gleaned from an inadvertently disclosed wiretap affidavit as a reason to discontinue the City's business relationship with the towing company. Fiore argued that the City's use of the wiretap information in its administrative processes violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968. The district court dismissed the complaint against the City for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Fiore appealed. We AFFIRM.

I.

According to the allegations in the complaint, in May 2018, the City of Detroit notified Fiore and her towing company that the City would cease doing business with them and "debarred"

them from working with the City "for years to come."  The City based its decisions, at least in part, on information that originated from a federal wiretap authorized under Title III.  The district court, relying on the complaint "as well as public court filings in several other cases," determined that the City had obtained that information after a public employee, Celia Washington, was indicted on federal charges for accepting bribes in exchange for steering towing contracts toward certain businesses.  The bribe money was supplied by Gasper Fiore, Joan Fiore's ex-husband.  Washington, who ultimately pleaded guilty, filed a pre-trial motion to suppress, attaching "an affidavit from an FBI agent containing information that had been lawfully collected from Title III wiretaps during the investigation of Washington."  Washington's attorney publicly docketed the wiretap affidavit, but inadvertently failed to seal it.  The court later sealed the record, but in the meantime, the City had "come into possession" of it.[1]  The wiretap affidavit is not in the appellate record, and the complaint does not describe its contents, though we are told by the parties that Joan Fiore "was personally a party to an intercepted conversation."

Fiore sued the City, claiming, as relevant for this appeal, that the City was civilly liable under Title III for its "use and willful[] disclos[ure]" of the wiretap information in deciding to cease doing business with her and her towing company.  *See* 18 U.S.C. § 2520.  The City moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The district court granted that motion.[2]  Fiore now appeals.

---

[1] Just how the City obtained the information is unclear; the complaint does not say.  But Fiore's reply brief in this court states that the City "came across the disclosure when it was publicized by the news media."

[2] Paul Ott and the towing company he owns, City Wide Towing, also were plaintiffs in this suit. The district court concluded, however, that Ott and City Wide Towing did not have a cause of action under Title III because "the complaint does not allege that the government captured, or the City disclosed or used, any of their communications" and thus they "failed to plead facts supporting a reasonable inference that they have a possessory interest in any of the interceptions."  Ott and

II.

We review de novo a district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Jackson v. Ford Motor Co.*, 842 F.3d 902, 906 (6th Cir. 2016). "In doing so, we also may affirm the judgment on any ground supported by the record." *Long v. Insight Commc'ns of Cent. Ohio, LLC*, 804 F.3d 791, 794 (6th Cir. 2015). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the pleading standards are not onerous, they lock "the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

"Title III authorizes the interception of private wire and oral communications, but only when law enforcement officials are investigating specified serious crimes and receive prior judicial approval, an approval that may not be given except upon compliance with stringent conditions." *Gelbard v. United States*, 408 U.S. 41, 46 (1972). Title III carries criminal penalties. *See id.* It also provides a civil cause of action to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [Title III.]" 18 U.S.C. § 2520(a). But "[s]ection 2520 itself creates no substantive rights. Rather, it simply provides a cause of action

City Wide Towing do not challenge this dispositive ruling on appeal. As a result, they have waived any challenges to it. *See Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 311 (6th Cir. 2005). We therefore do not consider any further claims as to Ott or City Wide Towing.

to vindicate rights identified in other portions of [Title III.]" *Seitz v. City of Elgin*, 719 F.3d 654, 657 (7th Cir. 2013).

"There is general consensus among the courts that a person or entity is civilly liable under § 2520 only if his (or its) conduct is illegal, i.e., criminal, under § 2511(1)." Clifford S. Fishman & Anne T. McKenna, *Wiretapping and Eavesdropping* § 3:36. Section 2511(1) imposes liability on those who intercept, disclose or use "wire, oral, or electronic communication[s]" under certain circumstances. Subsections (c) and (d) of § 2511(1) prohibit "any person" from intentionally disclosing or using, or endeavoring to disclose or use, wiretap information, but only if the person "know[s] or ha[s] reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of [Title III]."[3] 18 U.S.C. § 2511(1)(c), (d). Fiore's complaint does not allege that the underlying interception violated Title III, so she has no claim for civil liability against the City pursuant to § 2511(1)(c) or (d).[4]

For similar reasons, Fiore cannot claim that the City's use of the wiretap information violated Title III's exclusionary provision. *See* 18 U.S.C. § 2515. That provision prohibits the use

---

[3] 18 U.S.C. § 2511(1)(e) also prohibits any person from intentionally disclosing wiretap information "with intent to improperly obstruct, impede, or interfere with a duly authorized criminal investigation."

[4] It is also not clear that the City, which is not a "person" as defined in Title III, may be liable for violating § 2511(1)(c) or (d). *See* 18 U.S.C. § 2510(6) ("'[P]erson' means any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation."). In *Adams v. City of Battle Creek*, 250 F.3d 980, 985 (6th Cir. 2001), we noted that "the definition of 'person' in the statute . . . does not expressly include governmental entities" and held that a municipality is instead amenable to suit under the 1986 amendments to Title III, which added the term "entity" to § 2520(a). We did not expressly consider, however, whether an "entity" could be liable under the substantive provisions of § 2511(1), which attach only to "any person." *See Seitz*, 719 F.3d at 658 (noting, by contrast, that § 2511(3)(a)—"added by the same 1986 law that inserted 'or entity' into § 2520—prohibits 'a person *or entity*'" from engaging in certain conduct). We need not decide, however, whether a municipality may ever be liable for violating these provisions, given Fiore's failure to allege that the underlying interception violated Title III.

of wiretap information at a hearing, but only when "the disclosure of that information would be in violation of [Title III.]" *Id.* "What disclosures are forbidden [under § 2515], and are subject to motions to suppress, is in turn governed by § 2518(10)(a)."[5] *United States v. Giordano*, 416 U.S. 505, 524 (1974). Section 2518(10)(a) provides three grounds for suppression, all of which relate to the unlawfulness of the original interception. Because Fiore's complaint does not allege that the original interception was unlawful, her claim under § 2515 also fails.[6]

Fiore next turns to § 2517 as the substantive source of the City's liability. Unlike §§ 2511(1)(c) and (d), which concern only the use or disclosure of unlawful intercepts, § 2517 permits certain actors to use or disclose information they obtained "by any means authorized by this chapter." *See* 18 U.S.C. §§ 2517(1)–(3), (6)–(8); *see also id.* § 2517(5) (governing the use or disclosure of "communications" obtained "while engaged in . . . authorized" interceptions but which "relate[] to offenses other than those specified in the order of authorization or approval"). In 2001, Congress amended Title III to provide civil liability for willful violations of § 2517. *See* 18 U.S.C. § 2520(g). Under § 2520(g), "[a]ny willful disclosure or use by an investigative or law enforcement officer or governmental entity of information beyond the extent permitted by section 2517 is a violation of this chapter for purposes of section 2520(a)."

---

[5] Fiore's briefing erroneously asserts that § 2517 is the source of forbidden disclosures for the purposes of § 2515. It is not. *See Giordano*, 416 U.S. at 524; *see also Resha v. United States*, 767 F.2d 285, 288 (6th Cir. 1985) ("We construe § 2515 to permit suppression of evidence only if that evidence was derived from unlawful, improper or unauthorized *interceptions* of wire or oral communications. It does not authorize suppression for *disclosures* of such information, even if they violate § 2517.").

[6] Indeed, Fiore's counsel conceded at oral argument that Fiore had no grounds for excluding the wiretap information from the City's regulatory process. Yet if Fiore's reading of the statute were correct, the City would have to pay in damages for receiving into evidence information that it had no lawful grounds to exclude. We doubt that this is what Congress intended.

Though Fiore's complaint nominally alleges a violation of § 2517 and § 2520(g), it fails to plead a critical element of the claim: that the City *willfully* used the wiretap information in violation of Title III. The term "willful" first appeared in the pre-1986 version of Title III. Back then, "18 U.S.C. § 2511 made it a crime to 'willfully intercept[] . . . any wire or oral communication.'" *Farroni v. Farroni*, 862 F.2d 109, 110 (6th Cir. 1988) (alterations in original). We defined "willfully" as "knowingly or recklessly disregard[ing] a known legal duty." *Id.* at 112. In 1986, Congress "substitut[ed] 'intentionally' for 'willfully'" in § 2511. *Id.* at 110 n.1. But in 2001, Congress brought back "willful" in § 2520(g). USA PATRIOT ACT, Pub. L. No. 107-56, § 223, 115 Stat. 272, 293 (2001). We have no reason to believe that Congress's reintroduction of the term "willful" meant to convey a meaning different from its prior sense. *See* Fishman & McKenna, *Wiretapping and Eavesdropping* § 2:111 ("[P]re-[1986] case law applying the term 'willful' to Title III is relevant in helping courts assess how it should be applied to the [2001 amendments]."). So Fiore must plead sufficient facts to state a plausible claim that the City "knowingly or recklessly disregard[ed] a known legal duty" when it used the wiretap information. *Farroni*, 862 F.2d at 112.

Elsewhere, we have examined what a plaintiff must include in the complaint to survive a Rule 12(b)(6) motion on a claim that has "willfulness" as an element: she "must do more than make the conclusory assertion that a defendant acted willfully." *Crugher v. Prelesnik*, 761 F.3d 610, 617 (6th Cir. 2014) (quoting *Katoula v. Detroit Ent., LLC*, 557 F. App'x 496, 498 (6th Cir. 2014)). In *Katoula*, we noted that "[t]he Supreme Court specifically addressed state-of-mind pleading in *Iqbal*, and explained that Rule 9(b)—which allows a plaintiff to plead '[m]alice, intent, knowledge, and other conditions of a person's mind . . . generally'—does not give a plaintiff license to 'plead the bare elements of his cause of action . . . and expect his complaint to survive a

motion to dismiss.'" *Katoula*, 557 F. App'x at 498 (second, third, and fourth alterations in original) (quoting *Iqbal*, 556 U.S. at 686–87). The complaint in *Katoula* failed to plead "willfulness" because it "contain[ed] no facts that [would] allow a court to infer that [the defendant] knew or acted with reckless disregard of the fact that it was interfering with Katoula's rights." *Id.* Similarly, the complaint in *Crugher* failed because it was "devoid of any allegations supporting a finding of willfulness." *Crugher*, 761 F.3d at 617.

Like the complaints in *Crugher* and *Katoula*, Fiore's complaint offers only a conclusory statement that "[t]he City of Detroit continues to use and willfully disclose the Wiretap Affidavit and uses the wiretap information to support its actions against Plaintiffs." It contains no facts that would allow a court to infer that the City "knowingly or recklessly disregard[ed] a known legal duty" when it used the wiretap information. *Farroni*, 862 F.2d at 112. As a result, Fiore has not met her burden of pleading that the City acted willfully. *See Crugher*, 761 F.3d at 617; *Katoula*, 557 F. App'x at 498; *see also Iqbal*, 556 U.S. at 678 (stating that a "[t]hreadbare recital[] of the elements of a cause of action," without factual support, is insufficient to survive a motion to dismiss under Rule 12(b)(6)). Fiore's claim under § 2517 and § 2520(g) therefore fails. As we have now explained in a variety of contexts, "although conditions of a person's mind may be alleged generally, 'the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Crugher*, 761 F.3d at 617 (quoting *Katoula*, 557 F. App'x at 498); *see also Long*, 804 F.3d at 797–98 (dismissing a claim under the Stored Communications Act for failure to adequately plead state of mind).

Finally, Fiore invokes 18 U.S.C. § 2518(8)(b), which states that "[a]pplications made and orders granted under this chapter shall be sealed by the judge" and that "[s]uch applications and orders shall be disclosed only upon a showing of good cause." She asserts that the City

"'intentional[ly] used' a sealed wiretap affidavit following a disclosure that violated 18 U.S.C. § 2518(8)(b)." Even assuming that the affidavit at issue here (it is not in the record) would count as an "application" or "order," we question whether a violation of § 2518(8)(b) could give rise to civil liability under § 2520(a). Section 2518(8) contains its own enforcement provision, stating in subsection (c) that "violation of the provisions of this subsection may be punished as contempt." But even if civil liability were possible, Fiore's suit is aimed in the wrong direction. The complaint does not allege that the City had anything to do with the initial inadvertent disclosure and § 2518(8)(b) says nothing about the subsequent use of information inadvertently released to the public. Fiore has failed to state a claim upon which relief could be granted.

\* \* \*

We AFFIRM the district court's dismissal of the complaint.